JUDGE BUCHWALD

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
SAM DELUCA, and GEORGETTE TANASY-
DELUCA

                Plaintiff,

-against-

CITY OF NEW YORK, P.O. EDWARD GUZIK ; P.O.
CARY ROSE ; and

                Defendants.
------------------------------------------------------------------- x

12 CV 8896

**COMPLAINT WITH JURY DEMAND**

RECEIVED
DEC 07 2012
U.S.D.C. S.D. N.Y.
CASHIERS

## COMPLAINT

Plaintiffs Sam DeLuca ("Sam") and Georgette Tanasy-DeLuca ("Georgette"), by their attorneys, Liddle & Robinson, L.L.P., alleges as follows:

### THE NATURE OF THE ACTION

1. This is a civil rights action for damages and remedies in which the plaintiffs Sam DeLuca and Georgette Tanasy-DeLuca seek relief for the defendant's violation of plaintiff's rights secured by the Fourth and Fourteenth Amendments to the Constitution of the United States, and of rights secured under common law and the Constitution of the State of New York. Plaintiff seeks both compensatory and punitive damages, an award of costs, interest, attorney's fees, and such other relief as the Court deems just and proper.

### JURISDICTION

2. This action is brought pursuant to 42 U.S.C. § 1983 and § 1988 and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred

upon this court by 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343(3) and (4), this being an action seeking redress for violation of plaintiffs' constitutional and civil rights.

3. Plaintiffs further invokes this Court's pendent jurisdiction, pursuant to 28 U.S.C. Sec. 1367(a), over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

4. Plaintiffs timely submitted a Notice of Claim form to the City of New York. More than 30 days elapsed since the Notice of Claim was filed. The matter was not settled.

5. At the City's request, Plaintiffs attended and testified during a 50h hearing. During such hearings, the City requested the production of certain videotape and photograph documents. All requested documents were produced to the City.

## PARTIES

6. Plaintiffs Sam DeLuca ("Sam") and Georgette Tanasy-DeLuca ("Georgette") are married and citizens of the United States and were at all times herein residents of the State and City of New York.

7. The Defendants Guzik and Rose at all times hereinafter mentioned, upon information and belief, were and still are residents of the State of New York who were employed as police officers within the New York City Police Department's 17th Precinct, located at 167 East 51st Steet, New York, New York, 10022 by the Defendant City of New York at all relevant times; and are being sued individually and in their official capacity.

8. The Defendant City of New York at all times hereinafter mentioned was and still is a municipal organization organized by virtue of the laws of the State of New York.

## NOTICE OF CLAIM

9. Within 90 days of the events giving rise to this claim, Plaintiffs filed written Notice of Claim with the New York City Office of the Comptroller. Over 30 days have elapsed since the filing of that notice, and this matter has not been settled or otherwise disposed.

10. At the request of Defendant New York City, Plaintiffs testified during a 50h hearing.

11. At the request of Defendant New York City, Plaintiffs produced to Defendant New York City all documents requested by Defendant New York City.

## FACTUAL ALLEGATIONS

12. On September 9, 2011, at approximately 5:20 P.M., the Plaintiffs were at their home at 350 E 55th Street, New York, New York 10022. Several of Plaintiffs' employees were also within the home performing extensive renovations to the building. Plaintiffs' daughter was also within the home.

13. Defendants Guzik and Rose knocked on the front door to the building at approximately 5:20 p.m. on September 9, 2011. One of the individuals assisting Plaintiffs with the renovations, Jason D'Anna, responded to the knocking and opened the door. D'Anna did not have authority to permit police officers to enter the building.

14. Defendants Guzik and Rose met the Plaintiffs prior to September 9, 2011 and were within Plaintiffs' home on a prior occasion to assist with a dispute between Plaintiffs and their neighbor. Upon information and belief, Defendants Guzik and Rose knew that D'Anna did not have authority to permit them to enter the home.

15. Defendants Guzik and Rose demanded to see Plaintiff Sam DeLuca. At that time, Sam DeLuca was in the basement distributing payroll checks to construction workers who were assisting with the renovations. D'Anna led Defendants Guzik and Rose through the home and back yard to the basement. Georgette Tanasy-DeLuca met the officers in the backyard and requested an explanation for their presence. The officers did not respond, but instead walked past Georgette to the basement. Plaintiffs' daughter was present for this interaction.

16. The officers proceeded into the basement with Georgette and D'Anna – but continued to refuse to speak with Georgette. Upon seeing Sam, Defendant Guzik demanded that Sam immediately speak with him and his partner, Defendant Rose. Sam informed the officers he was in the middle of distributing payroll and that he would speak with them momentarily. Guzik insisted that Sam speak with him "right now." DeLuca told the Defendants to wait a few moments while he finished payroll. During this exchange, DeLuca was standing upon a pile of lumber.

17. Defendant Guzik responded to Plaintiff's second request to complete distribution of payroll by striking him in the back of the neck and knocking him to the ground. Defendants Guzik and Rose then pinned Sam to the ground in an awkward position – one of Sam's leg was propped up upon the stack of lumber – such that Sam struggled to breathe. Defendants struck Sam in excess of a dozen times upon his back and the back of his neck, while he was handcuffed and pinned to the ground. Sam did not resist in any fashion except to beg

the officers to stop. Georgette repeatedly asked the officers why they were hitting Sam and also begged them to stop.

18. During the assault upon Sam, Defendant Guzik repeatedly threatened to frame Sam for certain crimes, to frame Georgette for certain crimes, and to rape Georgette. In addition to Sam, Georgette and D'Anna, the following individuals witnessed the detention and assault: Tulio Contreras, Edwin Espana, Bernal Flores, and Garcia Lopez.

19. The officers' assault upon Sam was partially recorded by handheld video camera operated by D'Anna. Defendant Guzik knocked the camera away so that the assault could not be more fully recorded. However, Defendant Guzik was unable to prevent audio recording of the events. The handheld camera, and security cameras within the building, recorded the arrest and transport of Sam and Georgette from their home. These videos were provided to the City of New York at the City's request.

20. Defendant Rose told Defendant Guzik to arrest Georgette because she allegedly struck him stating "arrest the bitch." Throughout the detention of Sam, and the assault upon him, Georgette was not within reach of Defendant Guzik. Moreover, at all times, Defendant Rose was between Georgette and Defendant Guzik. Georgette informed Defendant Rose that she could not have assaulted Defendant Guzik. Defendant Rose agreed, but stated that he had to "trust his partner" just as Georgette had to "trust her husband," even though he didn't witness the alleged assault.

21. The officers' assault caused Sam to incur significant injuries that resulted in permanent damage. These injuries include, but are not limited to, a broken hip, substantial bruising across Sam's back, neck, arms, and legs. As a result of these injuries, Sam suffered and continues to suffer from pain, stiffness, and loss of range of motion in Sam's neck, back and hips.

22. Sam was purportedly arrested for drugs found in his possession following his arrest – the officers allegedly found drugs in the pockets of a pair of pants that belonged to Sam. Sam was not in possession of illegal drugs at the time of his arrest nor were there illegal drugs within the pair of pants. Plaintiffs were never advised why the officers entered Plaintiffs' home or why they initially wished to speak to Sam.

23. Georgette was arrested for assaulting Defendant Guzik.

24. Georgette did not assault Defendant Guzik.

25. In addition to the brutal assault upon Sam, Plaintiffs were roughly treated throughout their arrest and detention.

26. Defendants fastened Sam's handcuffs too tightly. Sam's hands were cuffed behind his back for hours.

27. Defendants fastened Georgette's handcuffs too tightly. Georgette's hands were cuffed behind her back for hours.

28. Plaintiffs' hands remained cuffed behind their backs during their arrest, transportation to the precinct, and while they awaited processing.

29. Sam repeatedly requested that the handcuffs upon Plaintiffs be loosened and placed in front of their bodies. Defendants refused Sam's request.

30. Georgette repeatedly requested that the handcuffs upon Plaintiffs be loosened and placed in front of their bodies. Defendants refused Georgette's request.

31. The prolonged application of overly tightened handcuffs in an awkward position caused Georgette to develop traumatic onset arthritis in both her wrists. This condition causes Georgette significant pain and swelling in both wrists.

32. Several weeks after Georgette's arrest, she was diagnosed with traumatic onset arthritis.

33. Georgette was not diagnosed with arthritis and did not experience pain or swelling in either wrist prior to her arrest. Georgette did not suffer any other trauma to her wrist in or around September 2011.

34. Georgette is a trained and licensed architect. Georgette also owns and operates Italco Data & Electric ("Italco") and 350 East 55th Street LLC ("350 East). Prior to her arrest, Georgette's services to Italco and 350 East included drafting architectural drawings. As a direct result of Defendants' malicious and grossly negligent application of handcuffs to Georgette, and refusal to remedy such application, Georgette is now unable to draft architectural drawings for either Italco or 350 East.

35. Georgette is on full disability because of the arthritis in her wrists. Georgette's disability forced her to retain an architect to perform services that she performed for Italco prior to developing arthritis as well as two additional employees. These services represent a significant cost to Italco, and therefore Georgette, the sole member.

36. Sam eventually agreed to enter a plea of no contest to a violation. The violation was unrelated to the alleged crimes for which he was arrested, drug possession, assault, or resisting arrest. The penalty for the violation was a small fine – far less than the continued cost of defending a felony prosecution. Sam was innocent of the alleged drug possession, assault and resisting arrest.

37. The criminal case against Georgette was adjourned in contemplation of dismissal.

38. Plaintiffs spent approximately 30 hours in jail before being released.

39. Plaintiffs were forced to expend $30,000 to retain a criminal defense attorney to defend the actions brought against them by the City of New York.

40. Defendants assault upon Plaintiffs caused and continues to cause them to incur medical expenses and expenses in connection with their medical treatments. Additionally, Plaintiffs' injuries continue to cause them pain and suffering.

## FIRST CLAIM
### (ILLEGAL SEARCH & SEIZURE)

41. Plaintiffs incorporate by reference each preceding paragraph of this complaint as though fully set forth at length herein.

42. The Defendants, acting under color of State law, subjected Plaintiffs to the foregoing acts without due process of law in violation of 42 U.S.C. sec. 1983 thereby depriving Plaintiffs of their rights, privileges and immunities secured by the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution, including, without limitations, deprivation of the following constitutional rights:

   a. Plaintiffs were deprived of their Fourth Amendment constitutional right to be free from unreasonable searches and seizure of his person;

    b. Plaintiffs were deprived of their Fourteenth amendment right to liberty without due process of law;

    c. Plaintiffs were deprived of their Fourteenth Amendment right to equal protection of the laws.

43. Plaintiffs were each damaged by the foregoing conduct by Defendants in an amount to be reasonably and equitably determined by a jury.

## SECOND CLAIM
## (DUE PROCESS VIOLATION)

44. Plaintiffs incorporate by reference each preceding paragraph of this complaint as though fully set forth at length herein.

45. Defendants subjected Plaintiffs to the foregoing acts without due process of law, thereby depriving Plaintiffs of rights, privileges and immunities secured by Article 1 sec. 1, 6, 8, 9, 11 and 12 of the New York State Constitution, including, without limitation, the following deprivations of their rights, privileges and immunities.

    a. Plaintiffs were deprived of his right to be free from unreasonable seizures of his person, in violation of sec. 12 if the constitution of New York;

  b. Plaintiffs were deprived of his rights to liberty, without due process of law, in violation of sec. 6 of the constitution of the State of New York;

  c. Plaintiffs were deprived of his right to equal protection of the laws, in violation of sec. 11 of the constitution of the State of New York.

46. Plaintiffs were each damaged by the foregoing conduct by Defendants in an amount to be reasonably and equitably determined by a jury.

## THIRD CAUSE OF ACTION
### (FALSE ARREST)

47. Plaintiffs incorporate by reference each preceding paragraph of this complaint as though fully set forth at length herein.

48. That the arrests, detentions and imprisonments of Plaintiffs were wrongful and malicious, and effected without good faith and without reasonable or probable cause or other legal justification or privilege.

49. That the acts and conduct of the Defendants constitute false arrest and false imprisonment under the law of the State of New York.

50. That Plaintiffs were wholly innocent of the aforesaid criminal charges and did not in any way contribute to the conduct of the Defendants, their agents, servants and employees.

51. That the Defendants intended to confine the Plaintiffs, and the Plaintiffs were conscious of such confinement and did not consent to their confinement.

52. The acts of the defendants P.O. Guzik and P.O. Rose were willful and with malicious disregard of Plaintiffs' rights and are therefore liable for punitive damages.

53. Plaintiffs were each damaged by the foregoing conduct by Defendants in an amount to be reasonably and equitably determined by a jury.

## FOURTH CAUSE OF ACTION
## (MALICIOUS PROSECUTION)

54. Plaintiffs incorporate by reference each preceding paragraph of this complaint as though fully set forth at length herein.

55. That the said charges and subsequent proceedings were instituted and procured by the Defendants, their agents, servants and employees unlawfully, maliciously and without any reasonable and probable cause whatsoever therefore.

56. That Plaintiffs were innocent but were forced to submit to such criminal proceedings until said proceedings were terminated in Plaintiffs' favor.

57. That the aforesaid conduct constitutes malicious prosecution under the laws of the State of New York.

58.   Plaintiffs were each damaged by the foregoing conduct by Defendants in an amount to be reasonably and equitably determined by a jury.

### FIFTH CAUSE OF ACTION
### (FAILURE TO SUPERVISE)

59.   Plaintiffs incorporate by reference each preceding paragraph of this complaint as though fully set forth at length herein.

60.   That the Defendants, their agents, servants and employees negligently, carelessly and recklessly among other acts or commission, to:

   a. Failed to perform their duties as a reasonable prudent police officer would have done under similar circumstances, including (but not limited to) conducting an improper and unlawful detention, assault, seizure, arrest and prosecution;

   b. Hired and retained incompetent and unfit police officers whom they knew or should have known possessed aggressive properties and a lack of proper temperament.

   c. Failed to exercise care instructing police officers as to their department, behavior, and conduct, including, but not limited to, failing to give proper instructions as to when citizens may be forcibly detained, taken into custody, as to the consequences of bringing false

      criminal charges, as to preparation and submission of false criminal charges;

d. Failed to adequately train and supervise their employees in regard to the decision to arrest and prosecute citizens.

e. Failed to establish meaningful procedures for disciplining officers who have engaged in such misconduct.

61. That upon information and belief, all the acts by the individual Defendants were carried out with the full knowledge, consent and cooperation and under the supervisory authority of Defendant City of New York.

62. That upon information and belief Defendant City of New York by its policy-making agents, servants and employees, authorized acts, and/or failed allowed or encouraged those acts to continue

63. That the conduct of the individual defendant was consistent with long-standing customs, practice, and usages of police officers employed by Defendant City of New York.

64. Upon information and belief, despite knowledge of such illegal de facto policies and practices, the supervising and policy making officers and officials of the police

department and Defendant City of New York have not taken adequate steps to terminate these policies and practices, have not disciplined individuals who engage in such practices or otherwise trained police officers with regard to the constitutional and statutory limits on the exercise of their authority, and have instead sanctioned and ratified these policies, customs and practices through their deliberate indifference to or negligent disregard of the effect of said policies, customs practices upon the constitutional rights of persons in the City of New York

65.     Plaintiffs were each damaged by the foregoing conduct by Defendant City of New York in an amount to be reasonably and equitably determined by a jury.

## SIXTH CAUSE OF ACTION
## (ASSAULT)

66.     Plaintiffs incorporate by reference each preceding paragraph of this complaint as though fully set forth at length herein.

67.     Upon approaching Plaintiff Sam DeLuca, and threatening his well being and the well being of his wife, Plaintiff Georgette DeLuca, including but not limited to threatening to beat Plaintiffs and to rape Plaintiff Georgette DeLuca, Defendants made Plaintiffs fear for their physical well-being and safety and placed them in apprehension of immediate harmful and/or offensive contact. Upon approaching and arresting plaintiffs, the officers placed them in apprehension of immediate harmful and/or offensive contact.

68. Defendants have deprived plaintiffs of their civil, constitutional and statutory rights and have conspired to deprive them of such rights and are liable to plaintiffs under common law, 42 USC §1983 and the New York State Constitution.

69. Plaintiffs were each damaged by Defendants' assaults in an amount to be reasonably and equitably determined by a jury.

### SEVENTH CAUSE OF ACTION
### (BATTERY)

70. Plaintiffs incorporate by reference each preceding paragraph of this complaint as though fully set forth herein.

71. Without plaintiffs consent, the officers engaged in and subjected plaintiffs to immediate harmful and/or offensive contact.

72. Defendants have deprived plaintiffs of their common law, civil, constitutional and statutory rights and have conspired to deprive them of such rights and are liable to plaintiffs under 42 USC §1983 and the New York State Constitution.

73. Each plaintiff was damaged by the battery of Defendants in an amount to be reasonably and equitably determined by a jury.

## EIGHTH CAUSE OF ACTION
## (EXCESSIVE AND UNREASONABLE FORCE)

74. Plaintiffs incorporate by reference each preceding paragraph of this complaint as though fully set forth herein.

75. Plaintiffs' rights were violated under the Fourth Amendment of the United States Constitution made applicable to the states via the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, in that plaintiffs were unlawfully subjected to excessive and unreasonable force by the defendants who assaulted and battered Plaintiffs.

76. That the excessive force that Plaintiffs were subjected to was effected by Defendants without authority of law and without any reasonable necessity to use any force, much less the excessive force that they employed and the force employed was used without legal justification, without Plaintiffs' consent, with malice and with an intent to inflict pain and suffering.

77. As a direct result of Defendants' actions, Plaintiffs were deprived of rights, privileges and immunities under the Fourth Amendment of the United States Constitution, more particularly Plaintiffs' right to be free from the use of excessive and unreasonable force.

78. That by reason of the unlawful use of excessive and unreasonable force, Plaintiffs were harmed physically and suffered emotional distress as a result of such physical harm.

79. Each plaintiff was damaged by the Defendants foregoing conduct in an amount to be reasonably and equitably determined by a jury.

### NINTH CAUSE OF ACTION
### (RESPONDEAT SUPERIOR)

80. Plaintiffs incorporate by reference each preceding paragraph of this complaint as though fully set forth at length herein.

81. Defendants Guzik's and Rose's intentional tortious acts were undertaken within the scope of their employment by Defendant City of New York and in furtherance of the Defendant City of New York's business.

82. As a result of the officers' tortious conduct in the course of their employment and in furtherance of the business of Defendant City of New York, Plaintiffs were damaged in an amount to be reasonably and equitably determined by a jury.

WHEREFORE, Plaintiffs demand judgment against the defendants, jointly and severally, as follows:

A. Awarding Plaintiffs compensatory damages in an amount to be reasonably and equitably determined by a jury for each of Plaintiffs' Causes of Action, in an amount not less than $5,000,000;

B. Awarding Plaintiffs punitive damages in an amount to be reasonably and equitably determined by a jury for each of plaintiffs' Causes of Action, in an amount not less than $5,000,000;

C. Awarding Plaintiffs emotional distress damages in an amount to be reasonably and equitably determined by a jury for each of Plaintiffs' Causes of Action;

D. Awarding Plaintiffs reasonable attorneys' fees, costs and disbursements of this action; and

E. Granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
December 7, 2012

LIDDLE & ROBINSON, L.L.P.

By: *[signature]*

James R. Hubbard
Matthew J. McDonald

800 Third Avenue
New York, New York 10022
(212) 687-8500
jhubbard@liddlerobinson.com
mmcdonald@liddlerobinson.com

*Attorneys for Plaintiffs*